James R. LOCKE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1082 S 383.

Supreme Court of Indiana.

April 17, 1984.

Rehearing Denied June 5, 1984.

Frank J. Gray, Gray & Associates, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant James R. Locke was convicted by a jury in the Allen Circuit Court of murder. The trial court subsequently sentenced him to forty years imprisonment. Appellant now directly appeals and raises the following seven issues:

1. whether the trial court erred by denying Appellant's motion to suppress his jailhouse statement to Diana Armstrong;

2. alleged denial of Appellant's speedy trial right;

3. alleged sentencing error;

4. alleged unconstitutionality of Indiana's preliminary charge statute;

5. whether the trial court erred by overruling Appellant's objection to a question posed to Witness Shifflett;

6. whether the trial court erred by sustaining the State's objection to a cross-examination question posed to Shifflett; and

7. whether the trial court erred by granting the State's motion *in limine* pertaining to a psychological evaluation.

Appellant was convicted of the shooting death of Brian Armstrong. Brian died on December 4, 1980, as a result of blood loss from two gunshot wounds, one in his face and the other in the side of his head. He was the seventeen-year-old son of Appellant's girlfriend, Diana Armstrong. Appellant admitted to Diana and subsequently to the police that he shot Brian but stated that the first shot was accidental. Appellant explained that he deliberately fired the second shot when he saw Brian quivering on the ground in pain.

I

Appellant now claims that the trial court erred by denying his motion to suppress Diana Armstrong's testimony about certain incriminating statements Appellant made to her while in jail. Before Diana talked with Appellant in jail, she agreed to let the police tape her conversation. This was done. The police later talked with Appellant who made the same admissions to them which he made to Diana. Appellant filed a motion to suppress Diana's testimony about her conversation with Appellant which motion was granted by the trial court. Although the tape recording of Diana Armstrong's conversation was neither put into evidence nor mentioned at trial, Diana testified at trial about the conversation. The record shows, however, that Appellant did not raise any objection at trial to Diana's testimony concerning her conversation with Appellant. Accordingly, the State now claims that Appellant waived any claim of error regarding the admission into evidence of Diana's testimony about the conversation. We agree with the State that Appellant waived this issue as he presented no objection to the trial court regarding Diana's testimony about her conversation with Appellant. *Minneman v. State,* (1982) Ind., 441 N.E.2d 673, *cert. denied* (1983) —— U.S. ——, 103 S.Ct. 2099, 77 L.Ed.2d 307; *Andrews v. State,* (1982) Ind., 441 N.E.2d 194.

Appellant further raises the same question in another way. After Appellant was convicted but before he was sentenced, he filed what he denoted a post-conviction relief petition. In said petition, Appellant argued that he should be granted a new trial based upon certain newly discovered evidence that Diana Armstrong's testimony was predicated on her conversation with

Appellant in jail after police had requested her aid in obtaining a confession. Appellant claims this evidence would have changed the outcome of his trial. We find that Appellant now appears to be attempting to justify his failure to object to Diana's testimony during trial since he claims that he did not know the police had discussed her conversation with Appellant before it actually took place. We first note that the record shows that Appellant moved to suppress this evidence before trial. Since Appellant did not object at trial to the admission of Diana's testimony, he waived any right he had for the trial court to consider the same. Furthermore, in order to qualify as newly discovered evidence capable of permitting a new trial, the evidence must satisfy a strict test for such. The nine part test is as follows:

"We have further indicated to gain such relief the evidence must meet a nine part test:

'(1) [T]hat the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced on a retrial of the case; and (9) that it will probably produce a different result.' Tungate v. State, (1957) 238 Ind. 48, 54–55, 147 N.E.2d 232, 235–36."

Wiles v. State, (1982) Ind., 437 N.E.2d 35, reh. denied. We agree with the State that Appellant fails to show that due diligence was used to discover the evidence before trial since Appellant knew who the witnesses were and easily could have discovered the alleged evidence. Moreover, Appellant's trial counsel elicited in Armstrong's deposition the precise information Appellant now claims was not discovered until after his trial. Appellant therefore had this evidence before him to present in his motion to suppress and could have objected during trial. Notwithstanding, Diana's testimony was cumulative of other evidence admitted by police officers to whom Appel-

lant had made the same confession. We find that Diana maintained that she had planned to talk with Appellant before the police talked with her about taping the conversation and that Appellant willingly talked to her. Any objection Appellant may have made, therefore, would go to impeach her testimony and not to exclude it. For all of these reasons, we find no reversible error in the actions of the trial court on this issue.

II

█ Appellant shows that he filed a speedy trial motion pursuant to Ind.R. Crim.P. 4(B) and claims that he was not tried within the time frame of that rule. Appellant concedes, however, that the speedy trial issue he now argues on appeal was not raised in this motion to correct errors. The State therefore contends that Appellant waived any error on this issue pursuant to Dew v. State, (1982) Ind., 439 N.E.2d 624. A speedy trial right may be waived if a defendant fails to timely complain about any deprivation thereof. Moreover, the deprivation of an accused's speedy trial right does not constitute fundamental error. Appellant did not raise this issue before the trial court nor did he raise it in his motion to correct errors. Accordingly, we find nothing to review. See Dean v. State, (1982) Ind., 433 N.E.2d 1172, supplemented Ind., 441 N.E.2d 457; Banks v. State, (1980) Ind., 402 N.E.2d 1213.

III

█ After Appellant was convicted, the trial court agreed to hear the evidence on Appellant's petition for post-conviction relief which we have already discussed in Issue I above. Appellant's sentencing hearing accordingly was continued. Upon the conclusion of the evidentiary hearing on Appellant's post-conviction motion, the trial court proceeded to sentence Appellant. Appellant's only complaint about sentencing is that he was not asked by the trial judge if he had anything to say to the court before his sentence was pronounced. Ap-

pellant concedes that he made no objection to the trial court's sentencing procedure at that time. Appellant now claims that he could have brought forth witnesses to show his good character and to show his lack of a previous criminal record which would have been relevant to his being sentenced. Appellant made no motion to the court, however, to permit him to bring forth any such witnesses and he did not object to the court proceeding to sentence without them. Appellant's failure to timely object to the alleged procedural error constitutes a waiver and we will not remand the cause to the trial court to re-do Appellant's sentencing. *White v. State,* (1982) Ind., 431 N.E.2d 488.

### IV

■ Appellant next contends that the Indiana preliminary charge procedure and provision for detention in Ind.Code § 35-4-1-1 (Burns 1979) [repealed effective September 1, 1982] was unconstitutional as it was applied to him. The record shows that Appellant was charged with battery and arrested on December 5, 1980. His bond was set at $50,000. After being brought before an Allen Superior Court judge, he was held in custody pursuant to the preliminary charge statute. The procedure established by said statute allowed the State to physically detain Appellant for up to seven days before the State was required to formally charge him with the actual crime he would be tried for. Appellant's complaint about the procedure followed in his case is that during the seven days he was held, police used allegedly illegal means to obtain incriminating evidence from him. This claim pertains to the issue we considered above in Issue I.

The record shows that Appellant's confession to Diana Armstrong and to police was made on the very first day of his detention. Furthermore, the State's position is well-taken that the purpose of Ind. Code § 35-4-1-1 is to protect a defendant's constitutional rights by having him brought before a magistrate to be informed of the charges against him and questioned as to his need for counsel. This was all done by the judge involved with this case who also found probable cause to detain Appellant for the extended period of seven days. Appellant does not, therefore, show any fact or circumstance by which this Court can find unconstitutional the preliminary charge statute or its provision for a seven day detention period. Appellant's claim that improper evidence was used to convict him already has been considered on the merits of that claim and does not relate to the provisions of the detention statute or to its use as provided for therein. We find no reversible error in this issue.

### V

■ Witness Tina Shifflett was Brian Armstrong's girlfriend. She testified for the State that Brian told her that he was going to have a secret meeting with Appellant on the night that he was killed. Tina specifically testified that she thought the circumstances of the meeting seemed "strange" to her. On direct examination, Tina was asked: "Did you discuss with Brian the apparent strangeness of this." Tina answered: "No. I thought it was strange but I didn't say anything to Brian." Appellant's trial counsel thereupon objected arguing that the jury had the exclusive authority to determine what was "strange" and Tina's answer amounted to opinion testimony which invaded the jury's province. Appellant's trial counsel also argued that the question posed to Tina was leading and suggestive. The trial court overruled Appellant's objection stating that Tina was merely explaining herself. Appellant's trial counsel then stated: "All right, your honor, I understand. Thank you." Even though Tina's response nominally represented an opinion, it was not necessarily reversible error. This Court has held:

"A lay witness may give an opinion, and the admission of such opinion evidence is within the discretion of the trial court and will be reversed only for an abuse of discretion."

*Hedrick v. State,* (1982) Ind., 430 N.E.2d 1150, 1155. Tina's testimony was that a

secret meeting between Brian and Appellant seemed unusual. It was based on her personal observations and we do not find that it was an abuse of discretion for the trial court to permit Tina to state her observation. The question and answer did not have such prejudicial impact upon Appellant to constitute reversible error.

## VI

 During the cross-examination of Tina Shifflett, the trial court sustained the State's objection to a particular question posed by defense counsel. Appellant now complains that the sustaining of the objection which resulted in the exclusion of certain evidence constituted reversible error. Appellant's trial counsel questioned Tina about how she met Brian and then asked her if Brian and her brother had once been in trouble together. The State objected to this question as seeking irrelevant facts and the trial court sustained the objection. Appellant now does not show that the fact that Brian may have been in trouble with Tina's brother at some time was relevant to the issues in this case or to the facts she testified about on direct examination. Furthermore, all evidence concerning Brian's trouble with the law was admitted into evidence through the testimony of Diana Armstrong so that Tina's testimony would have been no more than cumulative had it been admitted. Any possible error, therefore, was harmless.

## VII

 The State filed a pre-trial motion *in limine* directed to the testimony of Dr. Alan B. Silberman regarding the functioning of Appellant's personality and his ability to control impulses. Silberman apparently was planning to testify about the results of his psychological evaluation of Appellant. The State argues that such testimony was irrelevant. The trial court granted the State's motion in part and denied it in part. Appellant never offered Dr. Silberman as a witness nor attempted to present the evidence that the trial court had prohibited. In order to preserve the issue for review on appeal, Appellant had

to raise the question at trial and have the trial court refuse to allow the actual testimony. The ruling on a motion *in limine* is not reviewable on appeal because such a motion does not obtain a final ruling upon the admissibility of evidence. *Akins v. State*, (1981) Ind., 429 N.E.2d 232, *reh. denied* (1982); *Alleyn v. State*, (1981) Ind., 427 N.E.2d 1095. Accordingly, we find no question preserved for our appellate review.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.