Richard A. NEWHART, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 12S00–9412–CR–1250.

Supreme Court of Indiana.

July 30, 1996.

Richard D. Martin, Frankfort, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Richard Newhart guilty of murder, Ind.Code Ann. § 35–42–1–1 (West Supp.1995). The trial court imposed a sentence of sixty years, the maximum. We affirm the conviction, but reduce the sentence to fifty years.

The evidence at trial showed that a town marshall spotted Newhart speeding. He took chase, but lost sight of the vehicle. The marshall eventually discovered Newhart in a nearby woods, clothed only in his undershorts. A bystander had pulled Newhart from his vehicle, which was wrecked and on fire. He had a wound on his forehead and a clean cut on his wrist.

Law enforcement officers went to Newhart's home to tell his wife he had been in an accident. They discovered her dead on the kitchen floor, bloody and nude. A autopsy later revealed that Mrs. Newhart died from a stab wound in her chest. She also sustained a small wound on her back and multiple wounds to her head. Blood consistent with Richard Newhart's formed a pool near the body; it was also present on a knife apparently used in the killing. Newhart's fingerprint was found on a broken iron, imprinted in his wife's blood.

■ First, Newhart challenges his conviction on the ground that he received ineffective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution. His principal contention is that his lawyer knowingly used perjured testimony, namely, that of Newhart himself. Newhart filed an affidavit with his motion to correct error, stating that his lawyer concocted a fictional version of the events and told Newhart he could win an acquittal if Newhart would testify as the lawyer instructed. This version, to which Newhart testified at trial, was that Newhart had been sitting in the living room when he heard his wife scream, "Scott, what are you doing here?"[1] He went into the kitchen, was struck on the head, awoke to find his wife dead, and went for help.

■ The prosecution did not file any affidavit to contradict Newhart's claim that he and his lawyer conspired to present perjured testimony. While an uncontradicted affidavit is normally taken as true, *Majko v. State*, 503 N.E.2d 898 (Ind.1987), Newhart's affidavit is contradicted elsewhere in the record itself. *See Lopez v. State*, 527 N.E.2d 1119 (Ind. 1988).

Newhart's testimony at trial was one of three versions he had offered. In the first version, given the day after his wife's murder, Newhart told the police that she was all right when he left the house to purchase cigarettes on the night of the murder. He said he did not know she was dead until his mother told him while he was at the hospital receiving treatment for his injuries.

In his second version, Newhart tendered to his trial counsel a written confession to the crime. He gave this confession to his lawyer before trial. (R. At 33–34.)

In light of Newhart's three different stories, we conclude that Newhart has not presented a persuasive case that his lawyer participated in presenting the perjured testimony at trial. We observe that there is little which is legally subtle about committing perjury at trial. Newhart was certainly free to tell the truth.

Next, Newhart asserts several other grounds on which he contends he received ineffective assistance of counsel. For example, he claims his lawyer did not adequately consult with him, though appellate counsel candidly indicates that whatever further consultation might have occurred would not have altered the outcome.

■ Newhart also maintains his lawyer did not do an adequate job of requesting

1. Scott was the name of Mrs. Newhart's former   husband.

appointment of expert witnesses, a request the trial court denied as being tardy. Even at this late date, the defense still does not offer a cogent explanation of what sort of experts should have been supplied. Our standard for reviewing such claims, outlined in *Scott v. State,* 593 N.E.2d 198 (Ind.1992), suggests that Newhart was not deprived of anything to which he was entitled. Counsel's tardiness in making the request thus cannot be persuasively argued as ineffective.

■ Newhart also claims that his lawyer erred by not requesting a demonstration that the Indiana State Police expert who testified that Newhart's fingerprint was imposed on top of the deceased blood on the broken iron (rather than, he suggests, the fingerprint was on the iron and the blood was placed on top). He claims counsel should have demanded proof that this testimony met the test of *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923). The Frye test was no longer used in the federal courts at the time of Newhart's trial, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Moreover, this Court does not recognize *Frye* as a requirement under the Indiana Rules of Evidence. Ind.Evidence Rules 403, 702; *Harrison v. State,* 644 N.E.2d 1243, 1250 n. 12, 1251–52 & nn. 15, 16 (Ind.1995).

■ Third, Newhart challenges the trial court's failure to approve his lawyer's request for the appointment of experts to aid the defense. As we have indicated above, there is no indication that this was error under *Scott,* 593 N.E.2d 198. In particular, he challenges the trial court's refusal to grant him an *ex parte* hearing on his request. Our ethical rules counsel against such *ex parte* communications. Ind. Judicial Conduct Canon 3(B)(8). Newhart has not persuaded us that the trial court erred in this regard.

■ Fourth, Newhart claims the trial court should have granted a motion for mistrial his counsel made while Newhart was testifying on his own behalf. As we noted above, at trial Newhart claimed for the first time that an unknown perpetrator had entered the house, knocked him out and presumably killed his wife. On cross-examination, the State asked, "When's the first time you told the police about this mystery man who attacked you and your wife?" Defense counsel objected on grounds of materiality and relevance. More cogently, Newhart now contends the question violated his right to remain silent, citing *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In the first place, Newhart was not silent. He told the police a fabricated story about not being home because he was buying cigarettes. Secondly, we have decided this question before, adversely to Newhart's position. *See Bieghler v. State,* 481 N.E.2d 78 (Ind. 1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986) (finding at most harmless error where prosecutor asked defendant, "Prior to the beginning of this trial, did you ever tell the story that you've told today to anyone besides your attorneys?").

Finally, Newhart challenges the trial court's enhancement of his prison term to sixty years. He contends that the court's findings are inadequate to support the maximum sentence. We agree.

■ Although two of the aggravating circumstances cited by the trial court are found on the list of aggravating circumstances in the Indiana Code, the trial court inappropriately applied them to this case. The trial court found, for example, that Newhart needed "correctional rehabilitative treatment best provided by commitment to a penal facility." (R. at 1207.) Though this finding recites a provision of the statute, Ind.Code Ann. § 35–38–1–7.1(b)(3) (West Supp.1995), it is apparent that the court never considered assigning any penalty other than commitment to a penal facility (such as probation, for example)—and correctly so. *See Mayberry v. State,* 670 N.E.2d 1262 (Ind.1996).

■ The court also recited that "[i]mposition of a reduced sentence would depreciate the seriousness of the crime." (R. at 1207.) This statement also tracks an aggravating circumstance listed in the Code. Ind.Code Ann. 35–38–1–7(b)(4) (West Supp.1995). This factor is only applicable, however, when the court is considering the possibility of imposing less than the presumptive sentence

for a given crime. *Ector v. State,* 639 N.E.2d 1014 (Ind.1994).[2]

 Thus, only the third aggravating circumstance found by the trial court remains: "The brutal and serious nature of the crime exemplified by numerous wounds inflicted with different weapons." (R. at 130.) While the manner in which a crime is committed can be considered an aggravating circumstance, *Concepcion v. State,* 567 N.E.2d 784 (Ind.1991), we conclude that the finding here is adequate to support some enhancement, but inadequate to support the maximum term of imprisonment.

Accordingly, we affirm the conviction but direct that the trial court impose a sentence of fifty years.

DeBRULER, DICKSON, SULLIVAN, and SELBY, JJ., concur.

---

**2.** While it is true that a trial court can consider as a non-statutory aggravating circumstance the idea that "a sentence less than [an] *enhanced* term … would depreciate the seriousness of the crime," *Evans v. State,* 497 N.E.2d 919, 923–24 (Ind.1986), such consideration must be articulated. It cannot simply be assumed from a combination of the facts and the inappropriate recitation of the statutory aggravator. *See Ector,* 639 N.E.2d at 1016.