### Brad C. ANGLETON, Appellant (Defendant Below),

v.

### STATE of Indiana, Appellee (Plaintiff Below).

No. 49S00–9812–CR–755.

Supreme Court of Indiana.

Aug. 4, 1999.

Rehearing Denied Oct. 28, 1999.

Brad C. Angleton, Michigan City, Indiana, Pro Se.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Brad C. Angleton was convicted of the murder of his wife Cheryl and sentenced to an enhanced sentence of fifty-five years imprisonment.[1] His conviction was affirmed on direct appeal, but the case was remanded for a new sentencing hearing. *See Angleton v. State,* 686 N.E.2d 803 (Ind.1997). A new sentencing hearing was held, and Angleton was again sentenced to fifty-five years. He appeals that sentence, raising the following issues: (1) whether the trial court erred in denying his motion for change of judge; (2) whether the trial court erred in failing to ask him if he wanted to make a statement before sentencing him; (3) whether the trial court erred in its articulation of aggravating circumstances; and (4) whether his sentence is manifestly unreasonable. We affirm the trial court.

## I. Change of Judge

Angleton first contends that the trial court erred by not holding a hearing on his motion for change of judge. The motion was filed on May 8, 1998, and denied without a hearing on May 12. The second sentencing hearing was held on June 23. Angleton did not object to the summary denial of his motion without a hearing at any time before the sentencing hearing, nor did he object at the

1. The presumptive sentence for murder was forty years at the time of Angleton's crime. Ind.Code § 35–50–2–3(a) (1993). The maximum sentence was sixty years. *Id.*

sentencing hearing. His failure to object waives any claim of error on appeal. *Cf. Davidson v. State*, 580 N.E.2d 238, 244 (Ind. 1991) (failure to object at trial to denial of motion for change of venue from county without holding a hearing results in waiver).

## II. Right of Allocution at Sentencing

Angleton next argues that the trial court erred when it failed to ask him whether he wished to make a statement at sentencing. Indiana Code § 35–38–1–5 provides in relevant part that "[t]he defendant may also make a statement personally in his own behalf and, before pronouncing sentence, the court shall ask him whether he wishes to make such a statement." The trial court did not ask Angleton at the second sentencing hearing whether he wished to make a statement. Angleton made no objection to the trial court's omission, but now raises the issue and contends that he is entitled to yet another sentencing hearing because of it.

■ Angleton does not contend that he was unaware of his right to address the court at sentencing or that he would have made a statement if asked. Angleton was a practicing attorney in Indiana from 1985 to 1993. This was his second sentencing hearing, and he was asked at the first hearing whether he wished to make a statement but declined. Moreover, his counsel was asked at the second hearing if he had any witnesses to present and stated that he did not. A defendant, especially one under these circumstances, may not sit idly at a sentencing hearing, fail to object to a statutory defect in the proceeding, then seek a new sentencing hearing on that basis on appeal. The failure to object constitutes waiver. *Locke v. State*, 461 N.E.2d 1090, 1092–93 (Ind.1984); *Robles v.*

*State*, 705 N.E.2d 183, 187 (Ind.Ct.App. 1998).[2]

## III. The Sentencing Statement

At the second sentencing hearing the trial court found the "nature and circumstances of the crime" as the sole aggravating circumstance, and it articulated several components to that finding. First, Cheryl was asleep and "helpless" at the time of the murder, thereby rendering the killing "cold-blooded and calculated." Second, the killing was both an effort to obtain insurance money and a response to Cheryl's plan to leave Angleton. Finally, the trial court considered Angleton's "lack of actions that could be expected by someone whose wife had been killed," specifically "a failure to disclose financial difficulties, failure to assist with funeral expenses, the failure to consult with or inquire of police investigating agencies concerning any progress as to ascertaining the killer and the perpetrator of the burglary." As mitigating circumstances, the trial court repeated its findings from the first sentencing hearing that Angleton was unlikely to commit another crime and had assisted in a literacy program while incarcerated at the Marion County Jail. The trial court found as additional mitigating circumstances that Angleton had no prior criminal history and "the assistance Defendant has given to others incarcerated [at the Department of Correction] and the American Legion and the American Initiative for Liberty and Justice."

■ Angleton contends that the trial court erred in its finding of two components of the aggravator and in its articulation of

2. Angleton cites *Fields v. State*, 676 N.E.2d 27, 31 (Ind.Ct.App.1997), in which the Court of Appeals set aside a defendant's sentence and remanded for a new sentencing hearing because the trial court did not advise the defendant of the right to speak on his own behalf or ask whether he wished to make a statement. *Fields* did not cite *Locke* or make any mention of the defendant's failure to object to the trial court's omission. Perhaps this was because Fields appeared at sentencing without counsel. *See id.* at 29. Moreover, Angleton's citation to isolated language from *Ross v. State*, 676 N.E.2d 339 (Ind. 1996) does not support his contention that a new

sentencing hearing is required in his case. The trial court in *Ross* asked the defendant if he wished to make a statement but then stopped him during that statement to instruct him about "the purpose" of the statement. *Id.* at 342. We observed that trial courts "should unambiguously address the defendant and leave no question that the defendant was given an opportunity to speak on his own behalf." *Id.* at 344. Although this language from *Ross* and that of the statute itself places an affirmative duty on the trial court, the failure of a defendant to object nevertheless waives any claim of error on appeal. *Locke*, 461 N.E.2d at 1092–93; *Robles*, 705 N.E.2d at 187.

mitigating circumstances.[3] First, Angleton contends that the trial court's finding that the killing was "cold-blooded and calculated" was improper because it uses an element of the offense to aggravate a sentence. Specifically, Angleton argues that the finding that he shot Cheryl in the head while she slept was calculated or cold-blooded is simply another way of saying that he acted knowingly or intentionally, which repeats the material elements of the offense. IND.CODE § 35–42–1–1 (1998) (defining murder as "knowingly or intentionally kill[ing] another human being"). A trial court may not use a factor constituting a material element of an offense as an aggravating circumstance. *Johnson v. State,* 687 N.E.2d 345, 347 (Ind.1997); *Holmes v. State,* 642 N.E.2d 970, 972 (Ind.1994). However, killing one's wife by shooting her in the head while she was sleeping is something beyond a mere knowing or intentional killing as those terms are defined by statute.[4] It necessarily requires some degree of calculation or planning. The trial court did not abuse its discretion when it found this killing to be calculated and cold-blooded.

■ Angleton also contends that the trial court erred by finding his "failure to consult with or inquire of police investigating agencies concerning any progress as to ascertaining the killer and the perpetrator of the burglary" to be aggravating. As we observed on direct appeal, a defendant's constitutional privilege against self-incrimination protects him or her from being compelled to confess to the police. *Angleton,* 686 N.E.2d at 816 (citing *United States v. Lemon,* 723 F.2d 922, 937 (D.C.Cir.1983)). We held that the trial court erred when it relied on the conclusion that "Mr. Angleton knew what happened, and it was just a question of whether or not the Indianapolis Police Department could eventually put it together, as to what happened . . . ." *Id.*

■ Angleton had no duty to speak with the police investigating his wife's murder. Although he initiated contact with police to report a burglary and file a missing person report, his subsequent failure to follow up on these reports in the face of obvious police suspicion that he might have murdered Cheryl is not a proper basis on which to aggravate his sentence. However, as noted above, Angleton's failure to cooperate with police was only part of the "nature and circumstances of the crime" aggravator. The remaining components of that aggravator were proper, and a single aggravating circumstance may be sufficient to enhance a sentence. *Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999); *Sweany v. State,* 607 N.E.2d 387, 391 (Ind.1993).

■ Angleton also contends that the trial court "said absolutely nothing" at the second sentencing hearing about nineteen letters that were submitted on his behalf at the first sentencing hearing. Although defense counsel moved to incorporate those letters into the record at the second sentencing hearing and the State requested that the trial court "take notice of and adopt the evidence presented at the previous sentencing hearing as evidence in this case," the trial court did not rule on either motion. Angleton contends that the letters were a testament to his "character, personality, childhood, education, professional service as an attorney, law-abiding life, unlikelihood of committing another crime, and likelihood of rehabilitation." He cites two statutory mitigating circumstances that he suggests the trial court "could readily have found but did not" based on these letters and other evidence presented at the sentencing hearings. *See* IND.CODE §§ 35–38–1–7.1(c)(6) (1998) (defendant has no history of criminal or delinquent activity) & 35–

---

**3.** Angleton also contends that his second sentencing "seems incongruous" because the trial court recommended that he be placed in "minimum security" but gave him a sentence that automatically placed him in maximum security. The trial court's recommendation of minimum security was consistent with its belief that Angleton was unlikely to reoffend. Its apparent misunderstanding of the Department of Correction's placement procedures does not render the sentence imposed incongruous or otherwise erroneous.

**4.** "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." IND CODE § 35–41–2–2(a) (1998). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id.* § 35–41–2–2(b).

38–1–7.1(c)(7) (defendant is "likely to respond affirmatively to probation or short term imprisonment"). As explained above, the trial court did find Angleton's lack of criminal history to be a mitigating circumstance. Moreover, we find no error in the trial court's failure to find that Angleton was "likely to respond affirmatively to probation or short term imprisonment" as a mitigating circumstance. A purely probationary sentence or short-term imprisonment were not options available to trial court. The offense of murder is not suspendable, *see id.* § 35–50–2–2(b)(4)(A), and the minimum sentence at the time was thirty years. *See* IND.CODE § 35–50–2–3(a) (1993).

■ In sum, although not a model of clarity or thoroughness, the trial court's sentencing statement articulated one valid aggravating circumstance and several mitigating ones. The trial court concluded that "[b]alancing, however, is such that I again find the aggravating circumstances outweigh the mitigating circumstances to the extent that an increase from the presumptive sentence to the sentence of 55 years is called for and is appropriate under all the circumstances of the case." This adequately fulfilled the requirement that a sentencing statement "demonstrate that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence." *Crawley v. State,* 677 N.E.2d 520, 521–22 (Ind. 1997). Angleton is not entitled to a new sentencing hearing.

## IV. Manifestly Unreasonable

■ As a final point, Angleton contends that his sentence is manifestly unreasonable. Although this Court has the constitutional authority to review and revise sentences, IND. CONST. art. VII, § 4, it will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). This Court's review under Rule 17(B) is very deferential to the trial court: "[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (quoting *Prowell v. State,* 687 N.E.2d 563, 568 (Ind. 1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998)).[5]

■ The "nature of the offense" was that Angleton shot his wife while she was sleeping to profit from a life insurance policy and because she was planning to leave him. According to Angleton, "[t]here is nothing about this offense worse than Murder is by its nature: wrongly taking life." However, as the trial court observed, killing of one's wife for these reasons and under these circumstances is "calculated," if not "cold-blooded." The trial court was justified in aggravating the sentence based on the nature and circumstances of this murder and its decision to do so is entitled to deference in our review of the sentence under Appellate Rule 17(B).

Angleton also points to his character as supporting a reduction of his sentence. The trial court found that Angleton had no criminal record, was unlikely to commit another crime, and had assisted in the literacy program at the Marion County jail as well as-

5. Angleton asks that we view his second sentencing hearing in conjunction with the first. Because this Court found certain aggravators from the first sentencing hearing to be improper on direct appeal and the trial court found additional mitigating circumstances at the second sentencing hearing, Angleton contends that "the new sentence *must* have to be *less* than it originally was." However, he cites no authority (save "simple logic") for this proposition, and we are aware of none. As this Court recently observed in an appeal *after* resentencing in which the defendant did not contend that the second sentencing hearing should be viewed in conjunction with the first, "[w]e have no way of knowing which factors were assigned what level of significance. Sentencing decisions often defy quantifi-

cation." *Carter v. State,* 711 N.E.2d 835, 841 (Ind.1999). The trial court was free to weigh the aggravating and mitigating circumstances found at the second sentencing hearing without regard to its weighing at the first hearing. Moreover, this Court's review under the manifestly unreasonable standard of Appellate Rule 17(B) requires that we consider the nature of the offense and character of the offender as presented at the second hearing. This review will necessarily be more beneficial to Angleton as a result of his first appeal (in which some aggravators were found to be improper) and his second sentencing hearing (in which the trial court found additional mitigating circumstances). However, the weighing of factors and sentence imposed at the first hearing are irrelevant to this analysis.

sisting inmates and organizations while incarcerated at the Department of Correction. However, after weighing these mitigating circumstances pertaining to Angleton's character against the nature of the offense, the trial court concluded that an enhanced, but not maximum, sentence of fifty-five years was appropriate.

Angleton seeks to compare his case to that of the seventeen-year-old defendant in *Widener v. State*, 659 N.E.2d 529 (Ind.1995). In that case, this Court reduced consecutive sixty and ten year sentences for felony murder and conspiracy to commit robbery to a fifty year concurrent term. *Id.* at 534. The trial court found only the defendant's youthful age as a mitigating circumstance, but we observed the presence of several other mitigating circumstances including the defendant's lack of a significant history of criminal activity, his guilty plea and acceptance of responsibility for his actions, and that the plan was initiated and formulated by his codefendants. *Id.* Angleton contends that he was "a thirty-three year old attorney at the time of the offense with no prior record of any sort, a more significant accomplishment, surely, than Widener's seventeen year old life's clean record." However, this overlooks the other significant mitigating circumstances found in *Widener,* and not present in Angleton's case. Moreover, it fails to acknowledge that the trial court in his case, unlike Widener's, found and presumably weighed all significant mitigating circumstances in determining his sentence.

 Angleton also points to other cases in which this Court has reduced a sentence. For example, in *Newhart v. State,* 669 N.E.2d 953, 956 (Ind.1996), this Court held that the existence of only one valid aggravating circumstance—"[t]he brutal and serious nature of the crime exemplified by

numerous wounds inflicted with different weapons"—was inadequate to support the imposition of a maximum sentence for murder. However, it was sufficient to support some enhancement, and we accordingly reduced the sentence to fifty years. *Id.* Angleton contends that the killing of his wife "was not a brutal or especially violent one, unlike Newhart's violent, sustained, merciless attack upon his wife. . . ." Angleton's case is different, however, because he did not receive the maximum sentence and his crime involved some degree of planning or calculation, which was apparently not present in *Newhart.* Although severe, Angleton's sentence is not "clearly, plainly, and obviously" unreasonable. *Cf. Thacker v. State,* 709 N.E.2d 3, 9–11 (Ind.1999) (135 year sentence for murder, conspiracy to commit murder, and burglary was not manifestly unreasonable for a defendant who had no criminal history and which presented the "nature and circumstances" of the crime as the sole aggravating circumstance).[6]

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., dissents believing the balance of aggravating and mitigating circumstances identified by the majority support imposition of a sentence closer in length to the standard sentence for murder authorized by the legislature.

---

**6.** Angleton also notes that the Indiana Constitution provides that penalties shall be proportional and that the penal code shall be founded on the principles of reformation. *See* IND. CONST. art. I, §§ 16 & 18. For the same reasons explained above, Angleton's fifty-five year sentence for murder is not disproportionate "to the nature of the offense." IND. CONST. art. I, § 16. Nor does it violate Article I, § 18. As this Court recently reiterated in *Ratliff v. Cohn,* 693 N.E.2d 530, 542

(Ind.1998) "particularized, individual applications are not reviewable under Article 1, Section 18 because Section 18 applies to the penal code *as a whole* and does not protect fact-specific challenges." (emphasis in original). *See also Lowery v. State,* 478 N.E.2d 1214, 1220 (Ind. 1985) (death penalty does not violate Article I, § 18); *Williams v. State,* 426 N.E.2d 662, 670–71 (Ind.1981) (130 year sentence does not violate Article I, § 18).