## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2015, 10:21 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Bryan L. Ciyou | R.P. Fisher |
| Lori B. Schmeltzer | Fisher & Ireland |
| Ciyou & Dixon, P.C. | Wabash, Indiana |
| Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Marriage of:

Regina A. Niccum,

*Appellant-Respondent,*

v.

Matthew B. Niccum,

*Appellee-Petitioner.*

April 8, 2015

Court of Appeals Cause No. 85A02-1408-DR-551

Appeal from the Wabash Circuit Court
Cause No. 85C01-1011-DR-661

The Honorable Patrick R. Miller, Special Judge

**Barnes, Judge.**

# Case Summary

Regina Niccum appeals the trial court's denial of her motion to continue, the modification of custody, the modification of child support, and the award of attorney fees to her ex-husband, Matthew Niccum. We affirm.

# Issues

Regina raises four issues, which we reorder and restate as:

I.  whether the trial court properly denied her motion to continue;

II.  whether the trial court properly rejected her challenge to the qualifications of the guardian ad litem ("GAL");

III.  whether the trial court properly modified child support; and

IV.  whether the trial court properly awarded attorney fees to Matthew.

# Facts[1]

Regina and Matthew were married in 2006, and they had a child, H.N, in 2007. Their marriage was dissolved in 2011. At that time, the trial court awarded

---

[1] Regina's restatement of facts references several incidents that are irrelevant to the issues she raises on appeal. We remind counsel that the statement of facts "shall describe the facts relevant to the issues presented for review." Ind. Appellate R. 46(A)(6). Moreover, "The facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed." App. R. 46(A)(6)(b).

them joint legal custody of H.N. and awarded Matthew physical custody. The trial court awarded Regina parenting time, "at a minimum, pursuant to the Indiana Parenting Time Guidelines . . . ." App. p. 26. The trial court ordered Regina to pay $125.00 per week in child support. In calculating Regina's child support obligation, the trial court deviated from the Indiana Child Support Guidelines in part because Regina had five older children, four of whom resided with her full time and one of whom resided with her part time, and her receipt of child support for those children had been irregular. The trial court also considered that Matthew had other family financial support and the likelihood that Regina would have more parenting time than provided for in the Indiana Parenting Time Guidelines.

[4] The parties had difficulty communicating, and the custody exchanges were difficult at times. These issues were exacerbated by Regina's work schedule, which often required her to work weekends.

[5] On October 18, 2013, Regina petitioned to modify physical custody and terminate her child support obligation. Matthew then requested that Stephanie Gottschalk, who had been appointed as the GAL in the original dissolution proceeding, be reappointed to the case. Regina responded, requesting that someone else be appointed to serve as GAL. In November 2013, the trial court issued an order reappointing Gottschalk as GAL.

[6] On April 25, 2014, the matter was set for a one-day hearing on July 10, 2014. On May 29, 2014, Matthew petitioned for sole legal and physical custody. On

June 27, 2014, Matthew filed an objection to any continuances, explaining it had come to his attention that Regina had taken H.N. to one or more counselors in Marion, to a psychologist in Fort Wayne, and to a psychiatric nurse practitioner, Rachel Miller, who ultimately proscribed Zoloft for H.N. Matthew anticipated that Regina was going to move to continue the July hearing because Miller was not available to testify. On July 2, 2014, Regina filed a motion to continue the July 10, 2014 hearing. The unverified motion provided that counsel intended to call Miller as witness, that Miller was not available to testify that day, that documentation created by Miller would not be available in time for the hearing, and that Miller was a "necessary witness for [Regina's] case." *Id*. at 82. On July 7, 2014, the trial court denied Regina's request for a continuance.

[7] On July 10, 2014, the hearing was conducted. Gottschalk testified, and her GAL report was discussed by various witnesses and admitted into evidence without objection. At the conclusion of the hearing, Regina's counsel challenged whether Gottschalk was qualified to be a GAL. On July 17, 2014, the trial court issued an order denying Regina's challenge to Gottschalk's qualifications as untimely and unfounded, awarding legal and physical custody to Matthew, modifying Regina's child support obligation from $125.00 to $138.00 per week, and awarding Matthew $9,000.00 in attorney fees. Regina now appeals.

# Analysis

The trial court's findings were issued sua sponte, and they control only as to the issues they cover. *Townsend v. Townsend*, 20 N.E.3d 877, 879 (Ind. Ct. App. 2014). We "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We may not reweigh the evidence or reassess witness credibility, and we view the evidence most favorably to the judgment. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). A judgment is clearly erroneous if the evidence does not support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts. *Fraley v. Minger,* 829 N.E.2d 476, 482 (Ind. 2005). "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." *Best*, 941 N.E.2d at 502.

## *I. Continuance*

Regarding motions to continue a trial, Indiana Trial Rule 53.5 provides in part:

> Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence. . . . A motion to postpone the trial on account of the absence of evidence can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it; and where the evidence may be; and if it is for an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring the testimony within a reasonable time, and

that his absence has not been procured by the act or connivance of the party, nor by others at his request, nor with his knowledge and consent, and what facts he believes to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured.

"A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion, and there is a strong presumption the trial court properly exercised its discretion." *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009).

[10] Regina contends that the inability to call Miller to testify about her diagnosis and treatment of H.N. precluded her from presenting her case in its entirety. However, Regina's argument regarding the relevance of Miller's testimony is based in large part on evidence presented at the hearing, not just the contents of her motion to continue, which fell far short of establishing good cause for a continuance under Trial Rule 53.5. The motion to continue provided only that counsel intended to call Miller "from the Wabash County Bowen's center as witness" at the hearing, that Miller was not available to testify that day, that documentation created by Miller would not be available in time for the hearing, and that Miller was a "necessary witness for [Regina's] case." App. 82. The motion was not supported by affidavit and did not explain why Miller was necessary to Regina's case. This bare assertion of necessity was not sufficient to establish good cause for the continuance.

[11] Regina claims that the trial court could have ascertained Miller's testimony from the GAL report, which was filed with the trial court before her motion to continue and contained a summary of Miller's meeting with Regina and H.N.

Regina's motion to continue, however, did not reference or otherwise incorporate the GAL report, and she cites no authority for the proposition that the trial court must sua sponte examine all filings prior to ruling on a motion to continue. Moreover, the GAL report included a summary of Miller's meeting with H.N. and Regina, the basis of her diagnosis, and possible side effects of the medication she prescribed, and Regina does not explain what additional testimony Miller would have offered. As such, Regina has not established that she was prejudiced by the denial of her motion to continue. *See F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct. App. 2012) ("No abuse of discretion will be found when the moving party has not shown that he was prejudiced by the denial.").[2] Regina has not established that the trial court abused its discretion in denying her motion to continue.

---

[2] Regina argues that the trial court should have continued the hearing for a second hearing so Miller could testify; however, she does not direct us to any portion of the transcript showing that she requested a second hearing so that Miller could testify. Accordingly, Regina forfeited this issue. *Plank v. Cmty. Hosps. of Indiana, Inc.*, 981 N.E.2d 49, 54 (Ind. 2013) (explaining that forfeiture is the failure to make the timely assertion of a right and that appellate courts may sua sponte find an issue foreclosed under a variety of circumstances in which a party has failed to take the necessary steps to preserve it). Regina also claims that she was entitled to call Miller for cross-examination pursuant to Indiana Code Section 31-17-2-12(d), which provides, "Any party to the proceeding may call the investigator and any person whom the investigator has consulted for cross-examination. A party to the proceeding may not waive the party's right of cross-examination before the hearing." There is no indication, however, that Regina made this argument to the trial court or otherwise sought to call Miller to cross-examine her. This issue is waived. *See id.* at 53 ("Declining to review an issue not properly preserved for review is essentially a 'cardinal principal of sound judicial administration.'" (citation omitted)). Finally, Regina's "due process of law" argument is waived for failing to support it with cogent reasoning and citation to relevant authority. *See* Ind. Appellate. Rule. 46(A)(8)(a) (requiring each contention be supported by cogent reasoning and citation to authority).

## II. GAL Qualifications

[12] Regina asserts that Gottschalk was not statutorily qualified to serve as a GAL. Regina, however, did not timely challenge Gottschalk's qualifications. In her objection to Matthew's request to reappoint Gottschalk, Regina stated about Gottschalk, "While [Regina] does not question her qualification, [Regina] would point out that there are many equally qualified Guardian Ad Litems that would be able to serve in this matter." App. p. 38. Regina called Gottschalk to testify at the hearing, and she did not object to Gottschalk's testimony or the GAL report based on her qualifications. It was not until closing remarks that Regina's counsel asserted Gottschalk lacked training that is statutorily required in some circumstances. *See* Ind. Code § 31-9-2-50 ("A guardian ad litem who is not an attorney must complete the same court approved training program that is required for a court appointed special advocate under section 28 of this chapter."). At that point, Regina's attorney stated, "I understand her—her report's in and that her testimony is in, but I think the court needs to keep that in mind . . . ." Tr. p. 174.

[13] Our supreme court has observed:

> In general "waiver" connotes an "intentional relinquishment or abandonment of a known right." *United States v. Olano,* 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993) (quotation omitted). And appellate review presupposes that a litigant's arguments have been raised and considered in the trial court. "To abandon that principle is to encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Freytag v. Comm'r of Internal*

*Revenue,* 501 U.S. 868, 895, 111 S. Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring). Declining to review an issue not properly preserved for review is essentially a "cardinal principal of sound judicial administration."

*Plank v. Cmty. Hosps. of Indiana, Inc.*, 981 N.E.2d 49, 53 (Ind. 2013); *see also Angleton v. State*, 714 N.E.2d 156, 159 (Ind. 1999) ("A defendant . . . may not sit idly at a sentencing hearing, fail to object to a statutory defect in the proceeding, then seek a new sentencing hearing on that basis on appeal. The failure to object constitutes waiver."), *cert. denied*.

Gottschalk served as the GAL in the original dissolution proceeding and was reappointed without any challenge to her qualifications. The GAL report was submitted to the trial court without objection by Regina, and Regina called Gottschalk as a witness at the hearing. Only after the evidence was closed did Regina challenge the weight of the Gottschalk's testimony, not its admissibility. Regina may not call for reversal on the basis of Gottschalk's qualifications because the issue was not properly raised and considered in the trial at a time when the purported error could have be remedied. This issue was waived.

### III. Child Support

Regina also argues that the trial court erroneously modified her child support obligation. The modification of child support is controlled by Indiana Code Section 31-16-8-1(b), which provides:

> Except as provided in section 2 of this chapter, modification may be made only:
>
> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[17] Regina argues that, pursuant to this statute, "the trial court can only modify child support if there is both a twenty percent (20%) difference from the prior determination, and the prior determination was issued more than twelve (12) months prior." Appellant's Br. p. 38. She contends that the trial court did not have authority to modify child support from $125.00 per week to $138.00 per week because it is only is a 9% change. In modifying child support, the trial court found, "There has been demonstrated a substantial and continuing change in circumstances that makes the previously entered child support Order entered [sic] unreasonable." App. p. 17. Thus, the trial court's decision to modify child support was based on Indiana Code Section 31-16-8-1(b)(1), not Section 31-16-8-1(b)(2).[3]

---

[3] In her reply brief, Regina argues that Indiana Code Section 31-16-8-1(b)(1) is not applicable, "as the calculation actually results in only a 9% change, and this was not a continuing and substantial change in circumstances to make the prior award unreasonable." Regina, however, cites no authority for the proposition Indiana Code Section 31-16-8-1(b)(1) cannot be used as a basis for modifying support if there is only a 9% change in an award. This issue is waived. *See Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop cogent argument or provide adequate citation to authority and portions of the record."); App. R. 46(A)(8)(a) (requiring each contention to be supported by citation to authority).

[18]     To the extent Regina argues that there was not substantial change in circumstances to warrant the modification of child support because both parents are gainfully employed and the trial court did not modify physical custody, we are not persuaded. In the dissolution order, the trial court acknowledged that it was deviating from the Child Support Guidelines in part because Regina's receipt of support for her five other children was irregular and because the trial court anticipated she would have more parenting time with H.N. than provided for in the Parenting Time Guidelines. At the time of the July 2014 hearing, however, Regina only had three other unemancipated children living with her. It is also clear that the trial court no longer anticipated Regina would have excess parenting time and that Regina's income had increased more than Matthew's since the 2011 order. Thus, Regina has not established that this finding is clearly erroneous.

[19]     Regina also argues that the trial court erred in calculating her income at $89,258.00 because it included proceeds from her 401(k) and overtime and did not take into account her other children. In 2013, Regina reported income of $89,258.00, but, according to her testimony, without overtime and cashing in her 401(k), she would have made $56,000.00, her base salary. Regina testified her 2013 income was over $92,000 but she reported $89,258.88 because of contributions to her 401(k). She also testified that, based on her February 8, 2014 paystub, she was on track to earn almost $93,500.00 in 2014.

[20]     Assuming that Regina is correct that her 2013 income included proceeds from her 401(k), she does not direct us to evidence showing the amount of the 401(k).

Regarding overtime, Regina testified that she worked overtime because "if I'm not around the kids, I might as well be at work." Tr. p. 55. Without more, Regina has not established that the trial court abused its discretion by calculating her income at $89,258.00. *See Schwartz v. Heeter*, 994 N.E.2d 1102, 1105 (Ind. 2013) ("Accounting for irregular income under the Guidelines is a fact-sensitive inquiry within a trial court's discretion.").

[21] As far as the support of Regina's five other children, the trial court found that three other unemancipated children were living with her, but there was no testimony or evidence presented regarding her legal duty to support these children. Regina testified, "raising that many kids without any child support from their father is sometimes a bit of a challenge." Tr. p. 42. However, she went on to testify that she is supposed to receive $668.00 a month for them and that he pays "[w]henever he gets locked up." *Id.* at 43. She later testified that, at the time of the hearing, they were with their father for summer visitation. The trial court was free to weigh what little evidence there was regarding the support of Regina's other children, and she has not established that the trial court abused its discretion in calculating child support.[4]

---

[4] The chronological case summary indicates that, after the trial court issued its order, Regina's attorney sent a letter to the trial court, which was forwarded to Matthew's attorney. The trial court apparently reviewed the attachments to the letter and found them insufficient to determine Regina's "financial amount for her Court Order or Legal Duty for her Prior Born Children." App. p. 13. The parties do not discuss this filing, and it is not included in the appendix.

### *IV.  Attorney Fees*

Regina argues that the trial court erroneously ordered her to pay $9,000.00 in attorney fees to Matthew.  On this issue, the trial court found:

> 1.  . . . Father has incurred reasonable attorney fees in this matter in the sum of $13,300.00, and has requested an award of the same.
>
> 2.  In ruling on this request, the Court has considered the resources available to both parties, the economic circumstances of the parties, the abilities of the parties to engage in gainful employment and earn adequate income, whether a party was required to defend an unmeritorious claim, the results achieved by the parties, the complexity of the issues, and other such factors as the Court may. (Ind. Code § 34-52-1-1; Ind Code § 31-15-10-1; Ind Code § 31-16-11-1; Ind. Code § 31-17-7-1; Ind. Code 31-17-4-3)
>
> 3.  Having considered such factors, Mother is ordered to pay an award and judgment of $9,000.00 of reasonable attorney fees to Father, Matthew Niccum which award is in the nature of, and related to child support.  The fees shall be paid in full by December 31, 2014. . . .

App. p. 18.

Regarding child support and the modification of custody, a trial court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding.  *See* I.C. §§ 31-16-11-1, 31-17-7-1.  A determination of attorney fees is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion.  *Whited v. Whited*, 859 N.E.2d 657, 665 (Ind. 2007) (concerning modification of custody); *Barger v. Pate*, 831 N.E.2d 758, 765 (Ind. Ct. App. 2005) (applying abuse of discretion standard to attorney fee award in a custody modification proceeding).  "In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their

ability to engage in gainful employment, and other factors that bear on the award's reasonableness." *Whited*, 859 N.E.2d at 765. The trial court is not required to cite the reasons for its determination. *Id.*

[24] Regina argues that there is no evidence to support the trial court's finding that Matthew incurred $13,300.00 in attorney fees. We disagree. Matthew offered evidence that his attorney had spent fifty-three hours on the case prior to the hearing at a rate of $225.00 to $230.00 an hour. This is consistent with Matthew's testimony that before the hearing he met with his attorney and, at that time, his bill was around $12,000.00. The trial court was aware how long the hearing was and could infer that Matthew incurred an additional $1,300.00 in attorney fees related to the hearing. Further, another attorney testified at the hearing that a reasonable attorney fee for the case would be between $10,000.00 and $15,000.00. The evidence supports this finding.

[25] Regina also argues that the trial court abused its discretion in ordering her to pay the attorney fee award in five-and-a-half months considering her income, her child support obligation, and her support of her other children. However, the trial court was in the best position to consider the various factors, including the parties' ability to pay and the merits of the parties' claims, and we will not second guess that determination. *See Whited*, 844 N.E. at 665 (summarily affirming the trial court's decision to deny a request for attorney fees because "the trial court was in the best position to make this determination and consider the above factors").

# Conclusion

Regina has not established that the trial court abused its discretion in denying her motion to continue, in modifying child support, or in awarding Matthew $9,000.00 in attorney fees. Regina waived any challenge to the GAL's qualifications by not timely raising the issue. We affirm.

Affirmed.

May, J., and Pyle, J., concur.