

FILED

Jun 12 2017, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ivan Jones, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | June 12, 2017 <br><br> Court of Appeals Case No. 49A02-1611-CR-2513 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark D. Stoner, Judge <br><br> The Honorable Jeffrey Marchal, Magistrate <br><br> Trial Court Cause No. 49G06-1509-F5-32928 |

**Bailey, Judge.**

# Case Summary

After a bench trial, Jones was convicted of Battery, as a Level 5 felony.[1] He admitted to his status as a habitual offender.[2] Jones was subsequently sentenced to five years imprisonment, including a three-year habitual offender enhancement. He now appeals.

We reverse and remand.

# Issue

Jones raises a single issue for our review, which we restate as whether the trial court committed reversible error when it did not ask Jones directly whether he wished to exercise his right of allocution at sentencing, instead making that inquiry through counsel.

# Facts and Procedural History

On the night of September 11, 2015, Jones was walking along the 3000 block of Rybolt Avenue in Indianapolis. Jones was intoxicated to the point that his

---

[1] Ind. Code § 35-42-2-1.

[2] I.C. § 35-50-2-8.

walk was unsteady, and he was carrying a bottle containing an alcoholic beverage.

[5] At around 11:00, Jones encountered four teenagers walking down the street: Wesley Hardcastle ("Hardcastle"), Tyler Pruitt ("Pruitt"), Hardcastle's girlfriend, and another teenage girl. Jones approach the four teenagers and began talking to them. At some point, Jones made a statement that caused Hardcastle and Pruitt to encourage their companions to go home.

[6] Soon after this, Jones punched Hardcastle in the face, striking Hardcastle in the lip and chin. Hardcastle punched Jones back, striking Jones in the nose. Jones then pulled a knife out of his pocket and stabbed Hardcastle's forearm, causing a through-and-through wound. Hardcastle and Pruitt ran to Hardcastle's girlfriend's home and called police. Medics treated Hardcastle's arm and then transported him to a hospital by ambulance.

[7] When police arrived, Pruitt directed police to a house two doors down, toward which he had seen Jones run. Jones's mother permitted police inside. Police officers found Jones wearing clothing with dried blood and in possession of an old pocket knife that appeared to have dried blood on it. Jones was subsequently arrested.

[8] On September 15, 2015, Jones was charged with Battery, as a Level 5 felony. On August 3, 2016, the State alleged that Jones was a habitual offender.

[9] On September 21, 2016, a bench trial was conducted on the Battery charge. At the conclusion of the trial, the court found Jones guilty as charged. The proceedings were then bifurcated for purposes of obtaining a presentence investigation report.

[10] On October 19, 2016, a hearing was conducted during which Jones admitted to being a habitual offender, in exchange for which the State agreed to a maximum sentence enhancement of three years to be added to whatever term of imprisonment the court fixed for the Battery conviction. Prior to hearing argument of counsel, the trial court asked counsel for Jones whether Jones wished to exercise his right of allocution. Jones's counsel said that Jones did not wish to make a statement, and the court then heard argument of the parties concerning sentencing. At the end of the hearing, the trial court sentenced Jones to two years imprisonment for the Battery charge, enhanced by the agreed-to three year term for Jones's habitual offender status, yielding an aggregate term of imprisonment of five years.

[11] This appeal ensued.

# Discussion and Decision

## Nature of the Right of Allocution

[12] Jones challenges his sentence on one basis: he contends that the trial court erred when it did not directly ask him whether he wished to exercise his right of allocution at sentencing.

[13]     The current enactment of our state's allocution statute provides:

> When the defendant appears for sentencing, the court shall
> inform the defendant of the verdict of the jury or the finding of
> the court. The court shall afford counsel for the defendant an
> opportunity to speak on behalf of the defendant. The defendant
> may also make a statement personally in the defendant's own
> behalf and, before pronouncing sentence, the court shall ask the
> defendant whether the defendant wishes to make such a
> statement. Sentence shall then be pronounced, unless a sufficient
> cause is alleged or appears to the court for delay in sentencing.

I.C. § 35-38-1-5.

[14]     A defendant's right of allocution has existed at common law since 1682, *Ross v. State*, 676 N.E.2d 339, 343 (Ind. 1996), and was first codified in Indiana in 1905. *Biddinger v. State*, 868 N.E.2d 407, 410 (Ind. 2007). Allocution is thus tied through tradition and legislative enactment to a defendant's other due process rights. The opportunity to exercise the right of allocution "generally presents itself as a pre-sentencing procedure." *Vicory v. State*, 802 N.E.2d 426, 429 (Ind. 2004). "'The purpose of the right of allocution is to give the trial court the opportunity to consider the facts and circumstances relevant to the sentencing of the defendant in the case before it.'" *Id.* (quoting *Ross*, 676 N.E.2d at 343). The right of allocution was intended not to provide an opportunity for the court "to 'seek mitigating evidence or a plea for leniency.'" *Id.* (quoting *Minton v. State*, 400 N.E.2d 1177, 1180 (Ind. Ct. App. 1980)). Rather, the right exists "'to give the defendant a formal opportunity to show any one of the strictly defined legal grounds for avoidance or delay of the

sentence.'" *Id.* The Indiana Supreme Court quoted with approval this description of allocution:

> The trial is over, the jury has reached a verdict and the accused is guilty of the crime with which he was charged… But before the court decrees the inexorable legal consequences which necessarily follow the finding of guilt, the court formally addresses the prisoner, informs him of the jury's verdict and directly puts the interrogatory, "Do you know of any reason why judgment should not be pronounced upon you?"

*Ross*, 676 N.E.2d at 343 (quoting Paul W. Barrett, *Allocution*, 9 Mo. L. Rev. 115 (1944)).

[15] The purpose of the right of allocution is satisfied "[w]hen the defendant is given the opportunity to explain his view of the facts and circumstances." *Vicory*, 802 N.E.2d at 426. The right to allocution is "'minimally invasive,'" requiring only "'a few moments of court time.'" *Id.* at 429 (quoting *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir. 1991)). But on appeal, "a defendant claiming that he was denied his right to allocution carries a strong burden in establishing his claim." *Id.*

# Waiver

[16] Jones contends that his right of allocution was denied because the trial court asked Jones's counsel whether Jones intended to speak before sentencing, rather than asking Jones himself. The State argues that Jones lacked any right of allocution at all because, though he proceeded to trial on the underlying Battery conviction, he pled guilty to being a Habitual Offender and thus waived

his right. Because Jones thus lacked a statutory right of allocution, the State contends, there was no deprivation of any right.

[17] When a case proceeds to trial and either a jury verdict or a trial court's finding results in the defendant's conviction, a statutory right to allocution exists, but no such statutory right exists for a defendant who enters a guilty plea or to defendants in probation revocation proceedings. *Biddinger*, 868 N.E.2d at 412. The Indiana Supreme Court has held that although no statutory right to allocution exists in probation revocation proceedings and sentencing hearings following a guilty plea, it is error for a trial court to deny the defendant's request where a defendant directly seeks to exercise the right to allocution. *Id.* (citing Ind. Const. art. I, § 13; *Vicory*, 82 N.E.2d at 429). Error in such cases may, however, be harmless. *Id.* (finding harmless error from an appeal after a guilty plea where the defendant "fail[ed] to establish how the excluded portion of his statement would have made a difference in the sentence the trial court imposed."); *Vicory*, 802 N.E.3d at 430 (citing Ind. Trial Rule 61) (holding that because the defendant had testified earlier in a probation revocation hearing, "the court's refusal [to allow the defendant to exercise the right of allocution] did not affect his substantive rights such that reversal is warranted").

[18] We disagree with the State's contention that Jones lacked a statutory right of allocution because of Jones's admission of his habitual offender status. Jones's admission of his status had as its predicate a guilty "finding of the trial court," I.C. § 35-38-1-5, and the State acknowledges as much. The State suggests that Jones's admission to a status that serves to enhance his sentence mooted the

effect of his bench trial on the underlying criminal charge, characterizing as "unclear" whether and how the statutory right of allocution might apply. (Appellee's Br. at 11.) We think it far from unclear: the underlying offense of which Jones was convicted was the result of a trial to the court, and the statute's language is mandatory with respect to defendants who proceed to trial. We accordingly conclude that Jones did not waive his right of allocution.

## Inquiry with Counsel

[19] Having found no waiver, we turn to whether Jones was deprived of his statutory right of allocution. Jones likens the statutory right of allocution to the statutory provision that sets forth a procedure for waiver of a jury trial, in that in both cases the court must communicate personally with the defendant before proceeding.

[20] The allocution statute provides that the court "shall" provide defense counsel an opportunity to make a statement, provides separately that the defendant "may" give a statement, and goes on to require that the court "shall ask the defendant whether the defendant wishes to make such a statement." I.C. § 35-38-1-5. The statute, then, clearly mandates that the trial court direct inquiries concerning statements at the time of sentencing to both defense counsel and the defendant personally.

[21] A similar requirement obtains with respect to a jury trial: "The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. Unless a defendant waives the right to a jury trial under the Indiana

Rules of Criminal Procedure, all other trials must be by jury." I.C. § 35-37-1-2. Indiana courts have interpreted the statute to require that the trial court speak with the defendant personally—and not only through counsel—to ensure that the defendant intends to waive the right to a jury trial. *Horton v. State*, 51 N.E.3d 1154, 1158 (Ind. 2016). In *Horton*, the Indiana Supreme Court reiterated Indiana's commitment to requiring that trial courts confirm personally with a defendant the intent to waive a jury trial. Doing so, the court declined the State's request "to make a new personal-waiver exception where circumstances nevertheless imply waiver was the defendant's choice." *Id.* at 1160. The court reiterated that the personal waiver requirement with respect to a jury trial "eliminates an intolerable risk" that a defendant will be forced to a bench trial against her or his will. *Id.* The *Horton* Court saw "no reason to dilute our time-honored personal waiver requirement" given the "high stakes of erroneous jury-trial deprivation and the low cost of confirming personal waiver." *Id.* Thus, as with the right of allocution, our courts have reaffirmed the necessity of a personal waiver of a jury trial based in part upon the efficiency of the inquiry relative to the risk of error. *Compare id. with Vicory*, 802 N.E.2d at 429 (characterizing as "minimally invasive" the necessary colloquy between court and defendant concerning allocution).

[22] This Court has recently addressed the right of allocution after trial—that is, allocution that falls squarely within the allocution statute in Section 35-38-1-5— in *Owens v. State*, 69 N.E.3d 531 (Ind. Ct. App. 2017). Owens was arrested and charged with misdemeanor-level carrying a handgun without a license, and was

found guilty after a bench trial. *Id.* at 532. During an exchange with the trial court concerning whether Owens was to be remanded to the Marion County Jail or to Community Corrections following sentencing, Owens, through counsel, requested an opportunity to elicit testimony from Owens concerning his sentence—that is, Owens sought to exercise his right of allocution. *Id.* at 533. The trial court responded that it had already determined and announced the terms of Owens's sentence and did not permit Owens an opportunity for allocution. *Id.*

[23] A panel of this Court reversed Owens's sentence, resting its decision on the language of the allocution statute. The *Owens* panel stated:

> The trial court's failure to allow Owens's counsel to make a meaningful sentencing statement, advise Owens of his right to speak on his own behalf, or provide Owens an opportunity to make a statement constitutes a clear denial of Owens's right to due process and an abdication of the trial court's statutory obligations.

*Id.* at 534. The court observed that the allocution statute makes it mandatory that the trial court ask a defendant whether she or he wishes to speak at sentencing, and reminded trial courts of "their statutory duty to afford criminal defendants the rights that our General Assembly intended them to have during sentencing." *Id.* at 535. Notably, the *Owens* panel did not address questions of

waiver, invited error, or harmless error, instead emphasizing the mandatory nature of the allocution statute.[3]

[24] Turning to the case at bar, our review of the record discloses that the trial court did not advise Jones directly of his right of allocution and that Jones did not seek personally to make a statement. The totality of the colloquy about Jones's interest in exercising his right of allocution is as follows:

> THE COURT: Does your client wish to execute his right of allocution?
>
> [COUNSEL]: No, Judge.

(Tr. at 104.) After this, the parties offered argument. Jones argues that this procedure was flawed, and requests that we conclude that the trial court was required to ask Jones personally whether he wished to exercise his right of allocution. The State argues that the trial court's procedure was proper and that Jones's failure to object at sentencing to the challenged procedure amounts to waiver, so that we may reverse only upon a finding of fundamental error.

[25] In light of comparable mandatory statutory language in the allocution and jury waiver statutes, the long tradition of both the jury and allocution rights, and the low demand upon judicial resources of inquiring personally of the defendant

---

[3] The parties' briefs in *Owens*—of which we take judicial notice as part of this Court's records, *see* Ind. Evidence Rule 201(2)(C)—reflect argument over whether waiver or invited error existed. The opinion in *Owens* does not address those arguments.

relative to the risk of prejudice, we conclude that the trial court's failure to inquire personally with the defendant concerning allocution was error. We do not think the nature of the right of allocution is such that a defendant suffers waiver of the right unless he personally insists on speaking himself or gives counsel a proverbial "kick under the table" to prevent being sentenced without allocution. The statutory text does not suggest that such waiver should occur, and indeed the allocution statute is more explicit about the personal nature of the inquiry to be made by the trial court than is the jury trial statute. As to the contention that fundamental error cannot exist in the absence of any representation of what a defendant might have said had counsel not waived the right on the defendant's behalf, allocution is not an evidentiary matter or otherwise subject to proof of prejudice upon offer of proof or appeal. It is loss of the opportunity to engage in or personally waive the opportunity for allocution that is the harm to be cured here—not deprivation of the opportunity to say a particular thing.[4]

[26] The right of allocution is satisfied "[w]hen the defendant is given the opportunity to explain his view of the facts and circumstances." *Vicory*, 802 N.E.2d at 426. Jones was not afforded that opportunity in conformance with the statute, which provides that the right to waive allocution is personal to the

---

[4] It is difficult to see how a defendant could establish prejudice by providing a statement in an appellate brief as to what he might have said had his counsel not waived allocution on his behalf. Whether a trial court would have been persuaded by a statement upon allocution is not a typical evidentiary matter subject to the harmless error analysis.

defendant—not available for waiver by counsel.  Thus we conclude that such error was fundamental and mandates reversal of Jones's sentence.[5]

# Conclusion

Jones did not waive his right of allocution by admitting his habitual offender status after a bench trial on an underlying criminal charge.  The trial court's failure to inquire directly of Jones whether he wished to exercise his right of allocution was fundamental error.  We reverse and remand with instructions to conduct a new sentencing hearing.

Reversed and remanded.

Robb, J., concurs.
Vaidik, C.J., dissents with separate opinion.

---

[5] The dissent would affirm on the theory that Jones waived his right of allocution, citing *Angleton v. State*, 714 N.E.2d 156 (Ind. 1999).  *Angleton* is readily distinguishable on several grounds.  Angleton appealed citing the allocution statute after his second sentencing hearing, and during his first sentencing hearing, the court asked whether he wished to exercise his right of allocution—this satisfied some minimal communication between the court and Angleton as to his right of allocution.  Moreover, Angleton had been a licensed attorney in Indiana prior to his conviction for murder, and, at least during his appeal, proceeded *pro se*.  *Id.* at 159.  In this case, Jones was being sentenced for the first time in the instant proceeding rather than being resentenced, was not an attorney, and did not proceed *pro se*.

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ivan Jones, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 12, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1611-CR-2513 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark D. Stoner, Judge <br><br> The Honorable Jeffrey Marchal, Magistrate <br><br> Trial Court Cause No. <br> 49G06-1509-F5-32928 |

**Vaidik, Chief Judge, dissenting.**

[29] I respectfully dissent from the majority's conclusion that the trial court's failure to personally ask Jones whether he wished to make a statement at sentencing constitutes fundamental error mandating reversal of his sentence.

[30] Indiana Code section 35-38-1-5 provides in relevant part that "[t]he defendant may also make a statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a statement." At sentencing, the trial court asked defense counsel—not Jones personally—whether Jones wished to make a statement. Defense counsel said, "No." Tr. p. 104. While the trial court should have asked Jones personally whether he wished to make a statement, *see* Ind. Criminal Benchbook § 68.25.000 (3d ed. 2001) (sentencing dialogue for trial courts that includes asking the defendant personally if he has anything to say at sentencing), defense counsel did not speak up when the court failed to do so. Jones thus waived this issue. *See Angleton v. State*, 714 N.E.2d 156, 159 (Ind. 1999) (holding that the defendant waived the issue of whether the trial court erred by failing to ask him whether he wished to make a statement at sentencing by not objecting), *reh'g denied*.

[31] Nevertheless, the majority finds that the trial court's failure to ask Jones personally amounts to fundamental error pursuant to *Horton v. State*, 51 N.E.3d 1154 (Ind. 2016). I disagree. In *Horton*, the Indiana Supreme Court found the right to a jury trial to be so important that the trial court must get a personal waiver from the defendant before proceeding to a bench trial and that the failure to do so cannot be waived and is fundamental error. *Id.* at 1158-60; *see also Good v. State*, 267 Ind. 29, 366 N.E.2d 1169, 1171 (1977). Our Supreme Court explained that the right to a jury trial is "a bedrock of our criminal justice system," specifically guaranteed by Article 1, Section 13 of the Indiana

Constitution. *Horton*, 51 N.E.3d at 1158. The same cannot be said about the right of allocution. Moreover, contrary to the right to a jury trial, the Court has held that the right to be personally addressed about the right of allocution can be waived. *See Angleton*, 714 N.E.2d at 159.

[32] In addition, this is not a situation where the defendant was not informed of his right of allocution. *Cf. Owens v. State*, 69 N.E.3d 531, 534-35 (Ind. Ct. App. 2017) (reversing and remanding for a new sentencing hearing where the trial court did not ask either defense counsel or the defendant if the defendant wished to make a statement at sentencing). I would therefore affirm the trial court.