


FILED

Oct 23 2024, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Braven Harris,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

October 23, 2024

Court of Appeals Case No.
24A-CR-542

Appeal from the Marion Superior Court

The Honorable Jane Spencer Craney, Judge

Trial Court Cause No.
49D28-2209-MR-23928

---

**Opinion by Judge Tavitas**
Judges Crone and Bradford concur.

**Tavitas Judge.**

## Case Summary

[1]  Following a jury trial, Braven Harris was convicted of murder and sentenced to sixty years in the Department of Correction ("DOC"). Harris appeals and claims that: (1) the trial court abused its discretion by admitting into evidence certain online messages; and (2) the trial court erred by failing to ask Harris if he wished to exercise his right of allocution. We disagree and, accordingly, affirm.

## Issues

[2]  Harris presents two issues for our review, which we reorder and restate as:

> I.  Whether the trial court abused its discretion by admitting into evidence certain online messages.
>
> II.  Whether the trial court erred by failing to ask Harris if he desired to exercise his right of allocution.

## Facts

[3]  In the early morning hours of June 30, 2022, several people were at Kyria Tishner's home in Indianapolis, where they sat in the back yard around a firepit and drank alcohol. Among the people at Tishner's home that day were Payton Wilson, Mikey Allen, and the defendant, Harris. Allen and Harris were sitting on a couch in the back yard. At some point, Wilson told Harris that Harris needed to leave because Harris "d[id]n't belong there." Tr. Vol. II p. 144.

Harris then stood up and shot Wilson multiple times. After Harris shot Wilson, Harris and Allen ran to a car parked in a nearby alley and fled.

[4]　Officers from the Indianapolis Metropolitan Police Department ("IMPD") were dispatched to the scene of the shooting. IMPD Officer Michael Cheh arrived at the scene and determined that Wilson was dead. Tishner told the police that Harris was the shooter.[1] Officers collected shell casings from the scene. A subsequent autopsy of Wilson revealed that he had been shot multiple times, and the pathologist recovered several bullets from Wilson's body. Meanwhile, detectives obtained a warrant for Harris' arrest.

[5]　Several months later, on September 13, 2022, the police located and arrested Harris. At the time, Harris had in his possession a cell phone. The police obtained a warrant to search the cell phone, and a search of the phone revealed that someone had conducted a Google search on September 7, 2022, for the phrase "how to find out if I have a warrant." Tr. Vol. IV p. 63; Ex. Vol. I p. 174. The phone had also been used to search for "Indianapolis killing June," and "[a]ll Indianapolis shootings 2022." Tr. Vol. IV p. 65; *see also* Ex. Vol. I p. 177-78. The phone also contained a self-taken photo of Harris.

[6]　The police obtained a warrant for the Instagram account that was logged into the Instagram app on the phone. This account had a user name of "_profile5"

---

[1] Tishner stated at the scene that Harris was the shooter. The two other eyewitnesses initially told detectives that they did not know who shot Wilson and gave inconsistent descriptions of what happened. At trial, however, these eyewitnesses testified unequivocally that Harris shot Wilson.

and had an internal Instagram account number of 6998561673. Tr. Vol. III p. 207; Tr. Vol. IV pp. 13-14; Ex. Vol. I pp. 181-82. This Instagram account had sent a message on July 7, 2022, that stated, "Detective shows up where I was staying in nap,"[2] "And I had to get a new phone." Ex. Vol. I p. 182. When another Instagram user asked how "_profile5" was feeling, "_profile5" responded, "Worried," and "Stressed." *Id*. at 183. Other messages from "_profile5" stated, "That's what's stressing me[.] Only 2 people knew I was there," "I gotta leave nap again," and indicated that he would be gone for "[a]t least 3 months." *Id*. at 183, 185. In an Instagram message dated July 15, 2022, "_profile5" stated that he had to sell his car because the police were looking for it. When asked why the police were looking for his car, "_profile5" stated, "I can't say a lot on instagrams [sic]." *Id*. at 188. The person with whom the "_profile5" was messaging referred to him as "Braven," to which the account holder responded affirmatively. *Id*. Harris' first name is Braven.

[7] While incarcerated awaiting trial, Harris made several calls from jail, which were recorded. During these calls, Harris stated, "It's over then" when informed that the police had located his car. Ex. Vol. 2, State's Ex. 182, Redacted Jail Call 9.14 at 22.05.[3] Harris said that he had attempted to get rid of his car. *Id*. Harris also stated that he had been trying to "look at" and "stare at" the witnesses against him to "give them a message." *Id*., Redacted Jail Call

---

[2] "Nap" is a slang term for the city of Indianapolis. Tr. Vol. IV p. 14.

[3] These citations refer to the file names of the audio files located on the CD that is State's Exhibit 182.

9.16 at 17.14. Harris said that his friend needed to "apply pressure because these motherf\*\*kers will be ID-ing me." *Id.* In another recorded jail call, Harris stated that the witnesses listed in the probable cause affidavit were "snitching" on him. *Id.*, Redacted Jail Call 9.16 at 17.50. He also complained that his girlfriend had not gotten rid of his car. Referring to one of his upcoming court dates, Harris stated, "I just want as many people there so these witnesses can see motherf\*\*kers not playing." *Id.*, Redacted Jail Call 10.12 at 18.14.

[8] A jury trial was held on January 8-10, 2024. At trial, IMPD Detective Ronald Sayles testified that he submitted a search warrant for the Instagram account on Harris' phone to Meta, Inc., the parent company of Instagram. In return, Detective Sayles received the messages and an affidavit from Meta. Harris objected to the admission of the Instagram messages and argued that the messages were not properly authenticated because the affidavit from Meta "says that they are authenticating as business records messages under identifier 6998561673," but that "[t]his identifier does not appear in the warrant, nor do the number or profile returned to in the warrant appear in the affidavit." Tr. Vol. III p. 207. The State explained that the identifying number was generated by Meta in response to the warrant. After taking the matter under advisement, the trial court overruled Harris' objection and admitted the Instagram messages. Tr. Vol. IV p. 4. At the conclusion of the trial, the jury found Harris guilty as charged.

At the sentencing hearing, the trial court told Harris, "I give you first and last on sentencing. Do you have any witnesses you'd like to call?" Tr. Vo. IV p. 129. Harris called two witnesses: his sister, who testified that Harris was remorseful and who asked the court for leniency; and a social worker in the public defender's office, who testified regarding Harris' troubled upbringing. After Harris' witnesses testified, the trial court asked, "Anything further," to which Harris' counsel responded, "No, just argument." *Id*. at 141. The trial court did not ask Harris directly whether Harris wished to make a statement on his own behalf. The parties then presented their sentencing arguments, and the trial court imposed a sentence of sixty years in the DOC. Harris now appeals.

## Discussion and Decision

### I. Authenticating Instagram Messages

Harris argues that the trial court abused its discretion by admitting the Instagram messages without proper authentication. "We review challenges to the admission of evidence for an abuse of the trial court's discretion." *Jones v. State*, 218 N.E.3d 3, 9 (Ind. Ct. App. 2023) (citing *Combs v. State*, 168 N.E.3d 985, 990 (Ind. 2021)), *trans. denied*. A trial court abuses its discretion only if its decision on the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Howard v. State*, 236 N.E.3d 735, 742 (Ind. Ct. App. 2024) (citing *Spells v. State*, 225 N.E.3d 767, 771 (Ind. 2024)).

Authentication of evidence is governed by Indiana Evidence Rule 901(a), which provides: "To satisfy the requirement of authenticating or identifying an item of

evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Once this has been shown, "'any inconclusiveness regarding the exhibit's connection with the events at issue goes to the exhibit's weight, not its admissibility.'" *Wilson v. State*, 30 N.E.3d 1264, 1268 (Ind. Ct. App. 2015) (quoting *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014)), *trans. denied*. "'Absolute proof of authenticity is not required.'" *Id*. (quoting *Fry v. State*, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008)). Authentication of an exhibit can be established by either direct evidence or circumstantial evidence. *Id*. (citing *Pavlovich*, 6 N.E.3d at 976). "Letters and words set down by electronic recording and other forms of data compilation are included within Rule 901(a)." *Wilson*, 30 N.E.3d at 1268 (citing *Hape v. State*, 903 N.E.2d 977, 989 (Ind. Ct. App. 2009)).

[12] Here, the State presented sufficient evidence to show that the Instagram messages were made from Harris' Instagram account. The police found a cell phone on Harris when Harris was arrested. This cell phone, which had a photo of Harris on it, also contained the Instagram app with a user account of "_profile5." Tr. Vol. III p. 204-05. The State obtained a search warrant for this account, and Meta—Instagram's parent company—responded to this with a business record that listed the account number for "_profile5" as "6998561673." Ex. Vol. p. 182. All of the messages listed were sent to and from that account. The messages produced in response to the warrant also included a conversation in which the other party referred to the user as "Braven," Harris' first name. *Id*. at 188. From this, the trial court concluded that the State had adequately

shown that the messages were what the State claimed them to be—messages from Harris' Instagram account.

[13] Harris claims his case is similar to *Richardson v. State*, 79 N.E.3d 958 (Ind. Ct. App. 2017), *trans. denied.* In that case, the police recovered a cell phone from the body of a shooting victim. Although the phone was password-protected, the police were able to access a Facebook Messenger app that had a user name of "Bandman Trapp." *Id.* at 962. The Messenger app contained a conversation between Bandman Trapp and another user named "Little L Mike Brookside" that occurred a few days prior to the shooting. *Id.* Richardson moved to admit the conversation, claiming that the victim, using the name Bandman Trapp, had messaged "Little L Mike Brookside" indicating that Bandman Trapp planned to rob someone for a gun. *Id.* The trial court sustained the State's objection to the admission of this evidence.

[14] On appeal, we affirmed the trial court's decision to exclude the evidence, concluding:

> [The detective] described the procedure used to unlock the password-protected cellphone and after opening up the Facebook application, he located an account under the name of Bandman Trapp. Upon preliminary questioning by the State, [the detective] explained that there are several ways a Facebook account could be accessed. He clarified that anyone who signed into the Facebook account, through a computer or cellphone, could compose messages that would then sync to the Facebook application on the recovered cellphone. In other words, [the detective] had 'no idea who made that statement or who composed that message.' . . . Richardson did not present any evidence describing distinctive characteristics that could connect

> the particular statement to [the victim], nor did he present any
> other indicia of reliability establishing [the victim] as the author
> of the contested statement.

*Id*. at 963-64 (record citations omitted).

[15] In contrast, here, the State presented evidence that the messages were found on the Instagram app on Harris' phone and from the account number associated with the user name signed into the Instagram app on Harris' phone. The person with whom the account user was communicating also referred to the user by Harris' unusual first name, Braven, and the user responded to that name. The phone also contained a "selfie" photo of Harris. This was sufficient to support the trial court's finding that the messages were Harris' Instagram conversations. Any weakness in the State's authentication goes merely to the weight of the evidence, not its admissibility. *Wilson*, 30 N.E.3d at 1268. We, therefore, conclude that the trial court did not abuse its discretion in admitting the Instagram messages.[4]

## II. Right of Allocation

[16] Harris also claims that the trial court erred by failing to ask Harris if he desired to exercise his right of allocation—to personally address the trial court before his sentence was pronounced. The Indiana allocution statute provides:

---

[4] Even if we were to agree with Harris, any error in the admission of the messages would be harmless. Here, three eyewitnesses testified that Harris shot Wilson, and Harris made multiple incriminating statements on the recorded jail calls. Thus, we are satisfied that "there is no substantial likelihood that the questioned evidence contributed to the conviction." *Setlak v. State*, 234 N.E.3d 215, 219 (Ind. Ct. App. 2024).

> When the defendant appears for sentencing, the court shall inform the defendant of the verdict of the jury or the finding of the court. The court shall afford counsel for the defendant an opportunity to speak on behalf of the defendant. The defendant may also make a statement **personally** in the defendant's own behalf and, before pronouncing sentence, the court **shall ask the defendant** whether the defendant wishes to make such a statement. Sentence shall then be pronounced, unless a sufficient cause is alleged or appears to the court for delay in sentencing.

Ind. Code § 35-38-1-5 (emphases added).

[17] "The purpose of the right of allocution is to give the trial court the opportunity to consider the facts and circumstances relevant to the sentencing of the defendant in the case before it.'" *Vicory v. State*, 802 N.E.2d 426, 428-29 (Ind. 2004)[5] (citing *Ross v. State*, 676 N.E.2d 339, 343 (Ind. 1996)). Thus, "[w]hen the defendant is given the opportunity to explain his view of the facts and circumstances, the purpose of the right of allocution has been accomplished." *Id.* (citing *Minton*, 400 N.E.2d at 1180). "The right to allocution is 'minimally invasive,' requiring only 'a few moments of court time.'" *Vicory*, 802 N.E.2d at 429 (quoting *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir. 1991)). On appeal, "a defendant claiming that he was denied his right to allocution carries a strong burden in establishing his claim." *Id.*

---

[5] In *Strack v. State*, 186 N.E.3d 99, 103 n.1 (Ind. 2022), the Court disapproved of *Vicory* only to the extent it could be read to suggest that a defendant who chooses to testify for evidentiary purposes waives his or her right of allocution. Thus, *Vicory* remains good law for the purposes we cite it.

### A. Harris waived his allocution claim.

[18] Here, it is undisputed that the trial court did not ask if Harris wished to exercise his right of allocution. Harris argues that this is reversible error. The State argues that Harris waived this claim by failing to object when the trial court did not ask if Harris wished to exercise his right of allocution. We agree with the State.

[19] The trial court gave Harris the opportunity to present evidence in mitigation at the sentencing hearing. Harris took advantage of this opportunity by having his sister testify that Harris did not plan the murder and that Harris was only eighteen at the time of the shooting. After Harris had presented his evidence, the trial court asked if Harris had "[a]nything further?" *Id*. at 141. Harris' counsel replied, "No, just argument." *Id*.

[20] Our Supreme Court stated in *Angleton v. State*, 714 N.E.2d 156, 159 (Ind. 1999), that "a defendant . . . may not sit idly by at a sentencing hearing, fail to object to a statutory defect in the proceeding, then seek a new sentencing hearing on that basis on appeal. The failure to object constitutes waiver." The defendant in *Angleton*, like Harris here, claimed that the trial court erred by failing to ask the defendant whether he wished to make a statement at the sentencing hearing. And the Court held that the failure to object to this constituted waiver for purposes of appeal. *Id*.

[21] Harris argues that *Angleton* is distinguishable, because the defendant in that case was an attorney and the trial court's failure to ask the defendant if he wished to

exercise his right of allocution occurred at a second sentencing hearing after the Court remanded for resentencing in Angleton's first appeal. Angleton had been advised of his right to make a statement at his first sentencing hearing. Although the *Angleton* Court did mention these circumstances, the basis of its holding was Angleton's failure to object, not the fact that Angleton was an attorney. *Id.* Thus, although *Angleton* is not entirely on point with the present case, we still find it to be controlling.

[22] We also find support for our conclusion in *Abd v. State*, 120 N.E.3d 1126 (Ind. Ct. App. 2019). In that case, the defendant was convicted of murder and robbery. At sentencing, the trial court asked defense counsel if the defendant wished to exercise his right of allocution before the court pronounced its sentence. Defense counsel stated that the defendant would not exercise his right. On appeal, the defendant argued that the trial court committed fundamental error by not asking him directly, rather than through his counsel, whether he wished to exercise his right of allocution. The Court noted that the trial court asked defense counsel if the defendant wished to speak and that the defendant failed to "speak up or object" when his counsel declined. *Id*. at 1137. Thus, we concluded that the defendant waived his claim. *Id*. Again, although not precisely the same situation that is present here, we find *Abd* to support our conclusion that Harris waived his allocution claim. *See also Woods v. State*, 98 N.E.3d 656, 662 (Ind. Ct. App. 2018) (holding that defendant's allocution argument was waived on appeal where trial court asked defense counsel if

defendant wished to speak, defense counsel replied in the negative, and defendant did not speak up or disagree with her counsel's statement).

[23] Harris relies on *Jones v. State* 79 N.E.3d 911, 915-16 (Ind. Ct. App. 2017), in which a panel of this Court held that the allocution statute requires a trial court to directly ask the defendant whether he or she wishes to make a statement to the court and that the trial court's failure to do so was reversible error. The *Jones* Court compared the right of allocution to the right to a jury trial, which requires the defendant to personally waive the right. *Id*. at 915-16. Thus, even though the trial court in that case asked Jones' counsel whether Jones wished to exercise his right of allocution, and Jones' counsel responded in the negative, the *Jones* Court held that "the trial court's failure to inquire personally with the defendant concerning allocution was error." *Id*. at 917. The *Jones* Court held that the right of allocution was a right "personal to the defendant—not available for waiver by counsel." *Id*. Thus, the Court concluded, "such error was fundamental and mandate[d] reversal of Jones's sentence." *Id*.

[24] No subsequent opinion of this Court has followed the holding in *Jones*. *See Woods*, 98 N.E.3d at 663-64; *Abd*, 120 N.E.3d at 1137 (both declining to follow *Jones*). We too decline to follow *Jones*. We do not think that the statutory right of allocution is akin to the right to a jury trial—the foundation of our criminal justice system. Moreover, when a defendant is represented by counsel, as Harris was, he speaks to the trial court through his counsel. *Talbott v. State*, 204 N.E.3d 288, 299 (Ind. Ct. App. 2023) (citing *Flowers v. State*, 154 N.E.3d 854, 867 (Ind. Ct. App. 2020)), *reh'g denied*, *trans. denied*. The defense counsel in

*Talbott* waived the defendant's right to a speedy trial under Criminal Rule 4(B) by agreeing to postpone a status conference and failing to object to a trial date set outside the Rule 4(B) timeframe. Similarly, here, when Harris' counsel told the trial court that the defense had nothing further to present at the sentencing hearing, Harris was bound by this statement.

[25] While we acknowledge that the trial court should have, pursuant to the allocution statute, advised Harris personally that he had the right of allocution, we, nevertheless, conclude that Harris waived his allocution argument by failing to object or assert his statutory right of allocution at the sentencing hearing. *See Locke v. State*, 461 N.E.2d 1090, 1093 (Ind. 1984) (holding that defendant waived his claim that trial court erred by failing to ask if he wished to make a statement before the court imposed sentence because the defendant failed to timely object); *Robles v. State*, 705 N.E.2d 183, 187 (Ind. Ct. App. 1998) (holding that defendant waived claim that trial court erred by failing to grant him an opportunity to speak before the court imposed sentence because the record was "clear that Robles did not pose any objection at sentencing").

### B. The trial court's failure to ask Harris if he wished to exercise his right of allocution is not fundamental error.

[26] Harris also argues that, even if he did waive his allocution claim by failing to timely object, the trial court's failure here constitutes fundamental error. "'Fundamental error is an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal.'" *Strack v. State*, 186 N.E.3d 99, 103 (Ind. 2022) (quoting *Kelly v. State*, 122 N.E.3d 803, 805 (Ind.

2019). "[F]undamental error occurs only when the error 'makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm.'" *Id.* (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). An appellant bears a "heavy burden of showing fundamental error on appeal." *Id.* (citing *Isom v. State*, 170 N.E.3d 623, 651 (Ind. 2021)). And this burden is in addition to the "strong burden" a defendant bears when claiming he was denied the right of allocution. *Id.* (citing *Vicory*, 802 N.E.2d at 429). Harris has not met this burden.

[27] Harris' claim that, had he been offered an opportunity to speak, he would have shown respect to the trial court and the victim's family is insufficient to establish fundamental error. Indeed, as noted by the State, Harris declined to make a statement to the officer preparing the pre-sentence investigation report. This undermines Harris' claim that he would have exercised his right of allocution or shown respect to the trial court and the victim's family had he been allowed to speak. Also, Harris' sister testified at the sentencing hearing and stated that Harris did not "plan" the murder and that Harris was merely in the "wrong place, wrong time" with the "wrong people" and made "wrong decisions." Tr. Vol. IV p. 132. Thus, the trial court heard mitigating evidence in Harris' favor.

[28] Under these circumstances, we cannot say that the trial court committed fundamental error by not asking Harris if he wished to exercise his right of allocution. *See Strack*, 186 N.E.3d at 104 (rejecting defendant's claim of

fundamental error because he failed to show that his sentence would have been different had the trial court not required defendant to be subject to cross-examination during his allocution statement).

## Conclusion

[29] The trial court did not abuse its discretion by admitting the Instagram messages that were found on Harris' cell phone. Harris waived his claim regarding allocution by failing to timely object, and the trial court's failure to ask Harris if he wished to exercise his right of allocution was not fundamental error. Accordingly, we affirm the trial court's judgment.

[30] Affirmed.

Crone, J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Talisha R. Griffin
Joshua Vincent
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana